## HEARD v. HEARD.
### No. 4613.

Court of Appeal of Louisiana, Second Circuit.
June 30, 1933.

Rehearing Denied July 15, 1933.

Murff & Perkins, of Shreveport, for appellant.

Barksdale, Bullock, Warren, Clark & Van Hook, of Shreveport, for appellee.

MILLS, Judge.

Plaintiff brought this suit April 6, 1932, upon a promissory note for $1,400, made by defendant, payable to Miss Bettie Heard, dated July 1, 1925, due on demand, and bearing 5 per cent. per annum interest from maturity. Miss Bettie Heard, sister of the parties to this action, died in December, 1930, bequeathing all her property, including the above note, to petitioner. The note attached to the petition is prescribed on its face, and bears no indorsement of payments of either principal or interest. Plaintiff alleges that it has been acknowledged and kept in force by interest payments from time to time to and including a payment of interest on or about April 1, 1929. He admits a credit due defendant of $258.93 for funeral and last illness expenses of the deceased sister.

Defendant pleads a release by his sister and, in the alternative, the prescription of five years. In reconvention he prays for judgment in the amount advanced for funeral and other expenses as admitted in the petition.

Plaintiff closes his case in chief after filing in evidence the note sued on and a series of six letters from defendant to Miss Bettie Heard. These letters, in so far as they are pertinent, are dated and read as follows:

November 4, 1925. "Find enclosed check for $17.50 interest I was due first of last

month on the $1,400.00. Should have sent it to you before."

April 26, 1927. "You will find enclosed a check for $35.00 for interest. Hope to be able to send them on time from now on."

April 1, 1928. "Am enclosing you a check for $35.00. I am about to get on my feet again, this will make me even to the first of this month, won't it?"

February 15, 1929. "How far behind am I with you on interest, I haven't had time to check up on myself?"

April 1, 1929. "You will find check enclosed for your interest, would have sent it before now but just haven't been making much."

July 19, 1930. "Will send you a check soon or if I don't will bring you one when I come."

Defendant then took the stand and testified in support of his plea of release that his sister had never demanded payment of the note and says: "As well as I remember, it was in February or March, 1930, she was visiting my house."

Asked how the matter was brought up, he replied: "It was in regard to,—I was purchasing something and she talked about it also and she said she would release me from that note beings as I had gotten married, and she would deliver the note to me later. She didn't have it with her."

He says that the note was never delivered to him and that he did not give it any further thought.

In regard to the alleged interest payments, he denies ever having made any on this note except the one mentioned in the letter of date November 4, 1925. In explanation of the other letters, he says that his sister was the holder of two other notes of his, one for $200 and one for $275, one made personally to her and one inherited by her from his father, he does not know which; that the interest referred to in the letters subsequent to the one in which the $1,400 note is mentioned was intended to be paid on these two notes; that they called for 8 per cent. interest, making the yearly amount due approximately $35. He fails to give the due date of these notes in order to connect the payments mentioned in his letters with them. He claims that these two notes also were given to him by his sister at the same time that he was presented with the $1,400 note. He claims that the check referred to in his last letter was a pure gratuity with which to purchase the necessities of life. It is difficult to understand how a sister who had a few months before presented him with almost $2,000 worth of obligations could be in such dire necessity. He admits that his brother came to see him, accompanied by W. J. Patrick, but denies that he, on that occasion, acknowledged in any way the note sued on. He admits that he and his brother in Oklahoma opposed the probate of his sister's will, and that he put a mortgage on his property in favor of this brother in the month of March following the death of his sister.

In rebuttal, W. J. Patrick testifies that on the visit admitted by defendant, which was on March 14, 1931, plaintiff asked his brother if he was going to pay the note, and that defendant claimed a credit for the expenses advanced by him, and promised to send a statement showing the amount thereof. Plaintiff, in rebuttal, says that his sister had lived with him for more than thirty-five years prior to her death, and he had attended to all business matters for her. He says that the $200 note testified to was given by his sister to his brother a year or two before her death; that he never heard of the $275 note until this suit was filed; that on the day of his sister's funeral he mentioned the note to defendant, who acknowledged owing $1,375 on it; that, on his visit to his brother with Mr. Patrick in March, 1931, he asked his brother for a settlement of this note. Defendant did not deny owing the note, but claimed certain credits and promised to forward a detailed statement of them; that no statement was ever received by him; that he tried to see his brother again before the suit was filed; but that defendant refused to talk to him.

In the lower court there was judgment for plaintiff as prayed for. From this judgment defendant has appealed.

Counsel for defendant, in his brief, does not urge the defense of release. It is not supported by a preponderance of the testimony.

The only remaining defense is the plea of prescription.

As the instrument sued on is a demand note, prescription on it began to run from its date, July 1, 1925. Cassou v. Robbert, 166 La. 101, 116 So. 714.

The note being prescribed upon its face, the burden of proving an interruption falls upon the plaintiff. To sustain this burden plaintiff relies upon the evidence offered to show payments of interest. Canal Bank & Trust Co. v. Bank of Ascension, 140 La. 465, 73 So. 269; Lawrence v. Lawrence, 172 La. 587, 134 So. 753.

He does not depend upon proof of an acknowledgment of the debt, which counsel correctly contends must be clear, direct, specific and absolute. Union National Bank v. Evans, 43 La. Ann. 372, 9 So. 44; La Del Oil Properties v. Magnolia Petr. Co., 169 La. 1137, 126 So. 684.

Nor does plaintiff rely upon a new promise to pay after the accrual of prescription. Burdin v. Burdin, 171 La. 7, 129 So. 651.

Defendant admits that the first letter, of date November 4, 1925, contained a check for $17.50 to cover the first quarter's interest at 5 per cent. on the $1,400 note. In fact, he cannot deny it, for the letter specifically

says so. It is doubtful if the other letters, standing alone, would be sufficient to prove payments of interest, in view of the fact that no such payments are indorsed on the note. But, considered in connection with the first letter and with each other, we think they amply prove the payment of interest, as of the date of the letters, upon the note sued upon in this case. The amounts correspond exactly with the interest due on the note at the time of payment. Though the letter of April 1, 1929, does not give the amount of the check referred to, if it did not correspond with the amount due on the note at issue, defendant should have produced his canceled check to prove the discrepancy or should account for his failure to do so.

The contention, in view of all the testimony, that the check referred to in the letter of July 19, 1930, was a gift to help out his sister, is not reasonable. Again he fails to produce this canceled check and to show that it does not correspond in amount with the interest payments on the $1,400 note. Nor does he offer in evidence a single letter from his sister acknowledging any of these payments or touching on this transaction. It is most probable that such letters were sent and that they would be produced if they supported defendant's testimony. He does not testify that no such letters were written, or that, if written, they had been lost or destroyed.

We find, then, that payments of interest were made on this note as of the dates of the letters filed in evidence. Upon the authority of the cases cited above, these payments operated as an interruption of prescription thereon.

The judgment of the lower court is accordingly affirmed.